## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LILLIAN HAMPTON, KELLY MCKEON, AND JEN MACLEOD | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| v. | |
| NURTURE, INC., d/b/a Happy Family Organics and Happy Baby Organics | |
| Defendant. | |

## INTRODUCTION

1.     Plaintiffs Lillian Hampton, Kelly McKeon, and Jen MacLeod, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant Nurture, Inc., which manufactures and sells baby food under the brand names Happy Family Organics, Happy Baby Organics, and Happy Tot Organics (collectively "Happy Baby") for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose that the Baby Foods contain, or are at risk of containing, arsenic, lead, mercury and cadmium (together "heavy metals") and/or perchlorate or other ingredients or contaminants that do not conform to the packaging claims that do not conform to the labels, packaging, advertising, and statements of Defendant's Happy Baby products (the "Baby Food" as identified below) sold throughout the United States, including in this District. Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Class and Sub-Classes (as defined below) including: (i) requiring full disclosure of all such substances and ingredients in Defendant's marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class.

Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel and, as to all other matters, upon information and belief. Plaintiffs believe that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

## DEFENDANT MARKETS ITSELF AS SELLING ONLY PREMIUM BABY FOOD THAT IS SAFE FOR HUMAN CONSUMPTION

2.      Defendant manufactures, markets, advertises, labels, distributes, and sells baby food products under the brand names Happy Family Organics, Happy Baby Organics, and Happy Tot Organics (collectively, "Baby Foods") throughout the United States, including in this District. It claims to offer organic foods that are free of synthetic flavors and colors and touts that it "analyzes every batch of every one of [its] products…to make sure that they meet our strict standards and are safe for every baby, toddler, and adult to consume."[1]

3.      Defendant's packaging and labels further emphasize its alleged use of quality ingredients that are safe for human infant, baby, and toddler consumption, and represents that the Baby Foods are "organic baby food," suggesting that it is appropriate for consumption by babies or children.

4.      Yet nowhere in the labeling, advertising, statements, warranties, and/or packaging does Defendant disclose that the Baby Foods include and/or have a high risk of containing heavy metals or other ingredients or contaminants that do not conform to the labels, packaging, advertising, and statements.

5.      Indeed, the Baby Foods have been shown to contain significant levels of arsenic, mercury, lead, cadmium, and/or perchlorate—all known to pose health risks to humans and

---

[1] https://www.happyfamilyorganics.com/faqs/ (last accessed Feb. 11, 2021).

particularly infants. *See* Ex. 1 (Healthy Babies Bright Futures, *What's In My Baby's Food?*); Ex. 2 (heavy metal testing results for Defendant's Baby Foods).

6.      Despite this, Defendant warrants, promises, represents, misleads, labels, and/or advertises that the Baby Foods are free of any heavy metals, perchlorate, and/or non-organic ingredients by making assurances that the foods are organic and safe for infant, baby, or toddler consumption.

7.      Defendant asserts that its foods are appropriate for consumption by infants, babies and toddlers, that it promises to "work with trusted farmers and suppliers, source high-quality organic ingredients, and implement [] rigorous and uncompromising quality standards so you can feel confident in what you're feeding your family. [Its] promise is to bring you peace of mind[.]"[2] Defendant claims "each product is tested to make sure that they meet our strict standards and are safe for every baby, toddler, and adult to consume" and that "Happy Family's Quality and Food Safety program includes measures that help us prevent contamination by any harmful toxins. Notably, we require our suppliers to meet strict standards, validate performance through active monitoring, and proactively execute improvement projects based on areas of potential risk."[3] Defendant claims that it is developing an even stricter set of standards but fails to identify what those standards are.

8.      Defendant also asserts that the Baby Foods are safe and appropriate for consumption by babies through its representations that identify the appropriate age range that should consume the Baby Food. For example, Stage "1, 4+ months," Stage "2, 6+ months," "sitting baby," "crawling baby" etc. (collectively, the "Stage" representations). Each of the Baby Foods

---

[2] https://www.happyfamilyorganics.com/our-mission/going-beyond-organic-standards/.
[3] https://www.happyfamilyorganics.com/faqs/.

contain this "Stage" designation, identifying that it is suitable and appropriate for consumption by a baby or child.

9.      Consumers, like Plaintiff, lack the scientific knowledge necessary to determine whether the Defendant's products do in fact contain heavy metals or to know or ascertain the true nature of the ingredients or the quality of the Baby Foods. Reasonable consumers must and do rely on Defendant to honestly disclose what its products contain.

10.     It was recently revealed on information and belief that Defendant was knowingly, recklessly, and/or negligently selling the Baby Foods containing arsenic, mercury, cadmium, lead, and/or perchlorate.

11.     A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") reveals that parents' trust has been violated. *See* Ex. 3. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendant, was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the fact that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 3 at 2.

12.     The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals and… that the manufacturers have often sold foods that exceeded these levels." Ex. 3 at 4.

13.     The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals and… that the manufacturers have often sold foods that exceeded these levels." Ex. 3 at 4.

14.     "Naturally occurring toxic heavy metals may not be the only problem causing the unsafe levels of toxic heavy metals in baby foods; rather, baby food producers [] may be adding

ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix." Ex. 3 at 5.

15.     Ingredient testing by Defendant is inadequate; only by testing the final product can the "true danger posed by" the Baby Foods be identified. Ex. 3 at 6.

16.     It was recently revealed on information and belief that Defendant was knowingly, recklessly, and/or negligently selling the Baby Foods containing, or at risk of containing, arsenic, mercury, cadmium, lead, and/or perchlorate.

17.     Plaintiffs bring this action individually and on behalf of all consumers who purchased the Baby Foods, to cause the disclosure of the presence and/or risk of the presence of heavy metals, perchlorate, and/or non-organic or  other ingredients or contaminants that do not conform to the labels, packaging, advertising, and statements in the Baby Foods; to correct the false and misleading perception Defendant has created in the minds of consumers that the Baby Foods are high quality, healthy, and safe for infant consumption; and to obtain redress for those who have purchased the Baby Foods.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

19.     The Southern District of New York has personal jurisdiction over Defendant as Defendant is headquartered in this District and conducts substantial business in this State and in this District through its headquarters, sale of products, and commercial website.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs have suffered injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this district, Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## PARTIES

21.     Plaintiff Lillian Hampton is a resident of Vero Beach, Florida, and purchased Defendant's Baby Foods for her child. Plaintiff Hampton purchased Defendant's Baby Foods, including a variety of flavors such as sweet potato, apples, pear, and bananas as well as mixes. Plaintiff Hampton purchased the Baby Foods from Target in Vero Beach, Florida and Walmart in Vero Beach, Florida from July of 2020 until January of 2021. Prior to purchasing the Baby Foods, Plaintiff Hampton saw Defendant's claims on the packaging, including the "Stage" representations and "organic," which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's material omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Hampton was unaware that the Baby Foods contained any level of heavy metals, chemicals, or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed. Plaintiff Hampton was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

22.     Plaintiff Kelly McKeon is a resident of Plymouth, Minnesota, and purchased Defendant's Baby Foods for her child. Plaintiff McKeon purchased Defendant's Baby Foods,

including Happy Baby mixed berry yogis, strawberry yogis, sweet potato and banana teethers, blueberry and purple carrot teethers, sweet potato and carrot superfood puffs, apple oats and cinnamon baby food jar, banana and sweet potato baby food jar, carrots baby food jar, sweet potatoes baby food jar, apples spinach and kale baby food pouch, green beans spinach and pear baby food pouch, banana plum and granola baby food pouch, pear kale and spinach baby food pouch, banana raspberry and oats baby food pouch, and Happy Tot apple and spinach toddler bars. Plaintiff McKeon purchased the Baby Foods from Target in Plymouth, Minnesota and Lunds & Byerlys in Minnetonka, Minnesota from spring 2018 to the present. Prior to purchasing the Baby Foods, Plaintiff McKeon saw Defendant's claims on the packaging, including the "Stage" representations and "organic," which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's material omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff McKeon was unaware that the Baby Foods contained any level of heavy metals, chemicals, or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed. Plaintiff McKeon was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

23.     Plaintiff Jen MacLeod is a resident of Chicago, Illinois, and purchased Defendant's Baby Foods for her children. Plaintiff MacLeod purchased Happy Baby Purees (Clearly Crafted Pears & Prunes Baby Food Jar and Clearly Crafted Pears Pineapples & Avocados Baby Food Jar) as well as other Happy Baby products (Pea & Spinach Organic Teethers, Blueberry & Purple Carrot Organic Teethers, Mango & Pumpkin Organic Teether Cracker, Strawberry & Beet Organic

Teether Cracker, Purple Carrot & Blueberry Superfood Baby Puffs, Superfood Kale & Spinach Gluten Free Puffs, Strawberry & Beet Superfood Baby Puffs, Sweet Potato & Carrot Superfood Baby Puffs, Organic Yogis Strawberry Freeze-Dried Yogurt & Fruit Baby Snacks, Creamies Strawberry Raspberry & Carrot Freeze-Dried Snacks, Organic Yogis Strawberry Banana Freeze-Dried Greek Yogurt & Fruit Baby Snacks, Organic Creamies Apple Spinach Pea & Kiwi Freeze-Dried Baby Snacks, and Organic Yogis Mixed Berry Yogurt & Fruit Baby Snacks). Plaintiff MacLeod purchased the Baby Foods from Target in Chicago, Illinois from August 2020 to the present. Prior to purchasing the Baby Foods, Plaintiff MacLeod saw Defendant's nutritional claims on the packaging, including "organic" and the "Stage" representations, which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff MacLeod was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed. Plaintiff MacLeod was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

24.    As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Baby Foods that did not deliver what was promised.  They paid the premium price on the assumption that the labeling of the Baby Foods was accurate and that it was healthy, superior quality, organic, and safe for babies and children to ingest.  Plaintiffs would not have paid this money had they known that the Baby Foods contained any levels of the heavy metals, chemicals

and/or toxins. Plaintiffs were further injured because the Baby Foods that they purchased have no or *de minimis* value—or a value that was at least less than what they paid for the Baby Food— based on the presence of the alleged heavy metals, chemicals and toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiffs encounter the Baby Foods in the future, they could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Baby Foods.

25.     Defendant Nurture, Inc. is a Delaware corporation with its principal place of business located at 40 Fulton Street New York, New York 10038.

26.     Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Baby Foods under the baby food brand name Happy Baby throughout the United States, including in this District, during the Class Period (defined below). The advertising, labeling, and packaging for the Baby Foods, relied upon by Plaintiffs were prepared, reviewed, and/or approved by Defendant and its agents in New York, and were disseminated from New York by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Baby Foods were designed to encourage consumers to purchase the Baby Foods and reasonably misled the reasonable consumer, i.e., Plaintiffs and the Class, into purchasing the Baby Foods. Defendant owns, manufactures, and distributes the Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Baby Foods. Defendant is responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished Baby Foods.

27.     Defendant sells baby food products under the brand names "Happy Baby" and "Happy Tots" among others.

## FACTUAL ALLEGATIONS

### I.    THE BABY FOODS

28.     The Baby Foods include the following:

    a.    Oats & Quinoa Baby Cereal Organic Whole Grains with Iron - Sitting baby



b.  Oatmeal Baby Cereal, Clearly Crafted - Organic Whole Grains - for sitting baby




c.  Organics Sweet Potatoes - Stage 1



d.   Organics Pears - Stage 1





e.   Clearly Crafted Prunes Organic Baby Food, 1, 4+ months




f.  Simple Combos Apples, Spinach & Kale – 2



g.   Apples, Sweet Potatoes & Granola Clearly Crafted Organic Baby Food – 2

 

h.  Superfood Puffs - Apple & Broccoli Organic Grain Snack - for crawling baby






i.    Superfood Puffs Organic Grain Snack - Sweet Potato & Carrot







j.  Organic Rice Cakes Puffed Rice Snack – Apple





k.  Organic Teethers Blueberry & Purple Carrot - Sitting Baby







## II.    MISLEADING CLAIMS AND OMISSIONS

### A.    "Organic" Representations

29.    The following images are some representative examples of Defendant's "Organic" claims on the Baby Foods' packaging.




**B.    "Stage" Representations**

30.    The following images are some representative examples of Defendant's "Stage" claim on the Baby Foods' packaging:







### C.    Omissions

31.    As discussed above, Defendant's Baby Food packaging also misleadingly omitted the presence, or risk of, heavy metals and perchlorate. Defendant intentionally omitted disclosure of the presence or risk of these substances in order to induce and mislead reasonable consumers like Plaintiffs to purchase the Baby Food at premium prices.

## III.    THE PRESENCE OF HEAVY METALS AND/OR PERCHLORATE AT ANY LEVEL WOULD BE MATERIAL TO A REASONABLE CONSUMER DUE TO THE INHERENT AND KNOWN RISKS OF CONSUMPTION AND/OR EXPOSURE.

### A.    Heavy Metals

32.    At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained heavy metals, had a risk of containing heavy metals, and/or were not sufficiently tested for heavy metals. During this time, Defendant omitted any reference to the presence, or the risk of the presence, of heavy metals from the Baby Foods' packaging.

33.    Defendant knew or should have known that heavy metals were potentially dangerous contaminants that pose health risks to babies and children. Defendant knew or should have known that the standards for the presence of heavy metals in baby food have become increasingly stringent in recent years.

34.    Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence, or risk of, of heavy metals in the Baby Foods.

35.    Defendant knew or should have known that it owed consumers a duty of care to adequately test for heavy metals in the Baby Foods.

36.    Defendant knew or should have known that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies and children. Defendant knew or should

have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence, or risk, of heavy metals and for testing for heavy metals.

37.    A recent congressional report from the Subcommittee on Economic and Consumer Policy published on February 4, 2021, found that many of the products by the country's largest commercial baby food manufacturers, including Defendant, "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development." Ex. 3.

38.    In its published response to the Subcommittee report, Defendant stated that "as a brand that prides itself on a data-driven approach to quality, safety, and nutrition overall, we are deeply disappointed at the select usage of data we provided back in 2019, and the many inaccuracies in the report."[4] Defendant also indicated it intends to create a "contaminants management standard" but does not disclose further details.[5]

39.    As the Subcommittee report notes, the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects." Ex. 3 at 2.

40.    Arsenic, lead, mercury, and cadmium, four heavy metals found in the Baby Foods, are neurotoxins. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies." Ex. 3 at 2.

---

[4] https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/.
[5] *Id.*

41.     The heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)." Ex. 1 at 6. Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ. Ex. 1 at 6.

42.     Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]" Ex. 1 at 1.

### Arsenic

43.     The Baby Foods may contain arsenic which, when exposed to children early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants." Ex. 1 at 13. "There is no evidence that the harm caused by arsenic is reversible."[6] Arsenic exposure also creates a risk of "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]" Ex. 1 at 13.

44.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA as a maximum contaminant level).

---

[6] *Id.*

45.    Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[7] The FDA is also considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[8]

46.    While Defendant is the only baby food manufacturer that appears to regularly test its finished products for inorganic arsenic, it still sells its products even after testing confirms they are dangerously high in inorganic arsenic. Ex. 3 at 12-13. Defendant's typical Baby Food product contained 60 ppb inorganic arsenic. Ex. 3 at 3.

47.    Defendant set an internal limit of 100 ppb arsenic for its products but, despite this, has sold Baby Foods containing as much as 180 ppb inorganic arsenic. Ex. 3 at 14.

48.    Over 25% of products that Defendant tested for inorganic arsenic and sold contained inorganic arsenic levels exceeding 100 ppb. Ex. 3. at 14. The average amount of inorganic arsenic contained in Defendant's' baby foods was 59.94 ppb, nearly six times the FDA's and EPA's water limits of 10 ppb. Ex. 3 at 15.

*Lead*

49.    The Baby Foods also may contain lead, which is another carcinogen and developmental toxin known to cause health problems.

50.    Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth." Ex. 3 at 11.

---

[7] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).

[8] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (last accessed Feb. 10, 2021).

51.    Exposure to lead in food builds up over time.   Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

52.    Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified." Ex. 1 at 13.

53.    One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food. Ex. 1 at 7. Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD). Ex. 1 at 12.

54.    Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, have agreed that lead in baby foods should not exceed 1 ppb.[9] "The European Union has set the maximum lead level in infant formula to 20 ppb."[10]

55.    On January 15, 2021, EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021. 86 F.R. 28691 (Jan. 15, 2021). Previously, EPA had required treatment for water exceeding lead concentrations of 15 ppb. 40 C.F.R. 141, Subpart I.

56.    In the internal testing documents that Defendant produced to the Subcommittee, nearly 20% of the foods showed lead levels over 10 ppb. Ex. 3 at 3. Moreover, Defendant tested

---

[9] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).
[10] *Id.*

206 finished products for lead, 16 of which registered over 20 ppb lead—exceeding the lenient EU standard—and 39 of which tested over 10 ppb lead. Ex. 3 at 23. In fact, Defendant sold products containing lead levels as high as 641 ppb, over six times higher than its internal 100 ppb lead limit. Ex. 3 at 22.

57.     It is not clear whether even one of Defendant's Baby Foods registered at or below 1 ppb lead "which should be the upper limit for lead content according to the health experts at Consumer Reports, the Environmental Defense Fund, and the American Academy of Pediatrics." Ex. 3 at 23.

### *Mercury*

58.     The Baby Foods also may contain mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed *in utero*. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability. Ex. 1 at 14. Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children. Ex. 3 at 12-13.

59.     The EPA has set a maximum contaminant level for mercury in drinking water to 2 ppb. Ex. 3 at 32. Consumer advocates, including Healthy Babies Bright Futures, have "called for a goal of no measurable amount of mercury in baby food." Ex. 3 at 32.

60.     Defendant sold baby foods containing as much as 10 ppb mercury, five times more than the EPA's 2 ppb standard for drinking water. Ex. 3 at 32.

### *Cadmium*

61.     Finally, the Baby Foods may contain cadmium which has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking cadmium.

62.    Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]" Ex. 1 at 14. Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure." Ex. 1 at 14. The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[11]

63.    The EPA has set a maximum contaminant level for cadmium in drinking water of 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO has set a maximum cadmium level in drinking water to 3 ppb. Ex. 3 at 29.

64.    Defendant sold baby foods, such as cereal, with 49 ppb cadmium, nearly ten times the limit for drinking water. Ex. 3 at 31.

65.    Consumer advocates, including Healthy Babies Bright Futures, have "called for a goal of *no* measurable amount of cadmium in baby food." Ex. 3 at 29 (emphasis added).

66.    The FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[12]

---

[11] ATSDR, Public Health Statement: Cadmium (Sept. 2012), https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15 (last accessed Feb. 10, 2021).
[12] FDA, Metals, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed Feb. 10, 2021).

67.     Despite the known risks of exposure to these heavy metals, Defendant has negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiffs.

68.     Additionally, Defendant knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it the primary source of food for the child.  This leads to repeated exposure of the heavy metals to the child.

69.     Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the child's body to the point where poisoning, injury, and/or disease can occur.

70.     Defendant's omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially considering the long-standing campaign by Defendant to market the Baby Foods as healthy, safe, and high-quality to induce consumers, such as Plaintiffs, to purchase the products.  For instance, Defendant markets the Baby Foods as "organic" and appropriate for certain Stage[s] (i.e. "4+ months," "6+ months" etc.), both on the products' packaging and on Defendant's websites.

71.     Using such descriptions and promises makes Defendant's advertising campaign deceptive based on the presence or risk of heavy metals in the Baby Foods. Reasonable consumers, like Plaintiffs, would consider the mere presence or risk of heavy metals in the Baby Foods as a material fact in considering what baby food products to purchase.  Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Baby Foods are healthy, safe, high-quality and free of contaminants such as arsenic and lead.  Moreover, Defendant knew or should have

reasonably expected that the presence, or risk, of heavy metals in its Baby Foods is something an average consumer would consider in purchasing baby food. Defendant's representations and omissions are false, misleading, and reasonably likely to deceive the public.

72.    Moreover, reasonable consumers, such as Plaintiffs and other members of the Classes (as defined herein), would have no reason to believe and/or anticipate that the Baby Foods are not appropriate for consumption by a baby in the stated Stage or "organic." Non-disclosure and/or concealment of the presence or risk of heavy metals in the Baby Foods coupled with the misrepresentations alleged herein by Defendant suggesting that the food is appropriate for consumption by babies is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and members of the class would not have bought if the true quality was disclosed.  As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Baby Foods.

73.    Plaintiffs bring this action individually and on behalf of all other similarly situated consumers who purchased the Baby Foods, in order to cause the disclosure of the presence or risk, of heavy metals that pose a known risk to infants in the Baby Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Baby Foods.

**B.    Perchlorate**

74.    At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained perchlorate, were at risk of containing perchlorate, and/or were not sufficiently tested for perchlorate. During this time, Defendant omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

75.     Defendant knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to babies and children.

76.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

77.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

78.     Defendant knew or should have known that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies and children. Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

79.     Perchlorate disrupts thyroid functions that are crucial to brain development. Perchlorate has been "linked to IQ loss among children born to mothers with thyroid dysfunction."[13]

80.     The levels of perchlorate in children's food has increased significantly from 2005. Perchlorate—which is both a naturally occurring and manmade chemical—was approved by the FDA in 2005 for use as an antistatic in plastic food packaging. In 2016, the FDA expanded the approval to cover dry food handling equipment. Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

81.     The dangers of perchlorate in human food are recognized by the FDA.[14]

---

[13] Healthy Babies Bright Futures Report, at 8.
[14] FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Feb. 10, 2021) ("Human exposure to sufficient doses of perchlorate can interfere with

82. The EPA has also recognized the dangers of perchlorate in drinking water and has set the maximum contaminant level goal for perchlorate in drinking water of 56 μg/L. 85 F.R. 43990 (July 21, 2020).

83. Still, certain Baby Foods are sold by Defendant that may contain levels of perchlorate.

84. Despite the risk and/or actual presence of these non-organic and potentially harmful chemicals, Defendant prominently warrants, claims, features, represents, advertises, or otherwise markets the Baby Foods as appropriate for consumption by a baby or child in the stated Stage, and "organic" and fails to disclose the presence, or risk of, heavy metals and perchlorate.

## IV.    DEFENDANT FALSELY ADVERTISES THE BABY FOODS AS NUTRITIOUS AND HEALTHY WHILE OMITTING ANY MENTION OF THE RISK AND/OR ACTUAL INCLUSION OF HEAVY METALS AND PERCHLORATE.

85. Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive Happy Baby and Happy Tot lines of baby food products across the United States, including the Baby Foods.

86. Defendant positions the Baby Foods as "organic" to place them within the premium category of baby food.

87. Defendant has represented a commitment to using real and simple ingredients. Indeed, the packaging emphasizes to consumers that the Baby Foods are organic and high-quality.

88. Defendant has a duty to ensure that the Baby Foods live up to these representations and its market positioning of the Baby Food as high-quality and premium. As such, Defendant knew or should have known that the Baby Foods had a high risk and/or actually included heavy

---

iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

89.     On its website, Defendant specifically explains it is a "founding member of the Baby Food Council, created in January 2019 with the shared goal of reducing levels of heavy metals in food products to as low as reasonably achievable using best-in-class management techniques. The Baby Food Council was established by Cornell University and the Environmental Defense Fund, and includes government agencies, industry experts, and other leading baby food companies working together to implement the latest guidance on health, safety, and nutrition from environmental, medical, and academic advisors."[15] As such, Defendant knew or should have known that the Baby Foods contained or had a risk of containing heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

90.     Based on these false representations and omissions, Defendant charges a premium, knowing that the claimed premium quality of the Baby Foods (as well as all of the other alleged false and/or misleading representations and omissions discussed herein) is something an average consumer would consider as a reason to choose a more expensive baby food product. By negligently and/or deceptively representing, marketing, and advertising the Baby Foods as organic, healthy, and safe for babies' and children's consumption, Defendant wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for premium baby food products.

91.     Additionally, Defendant knew or should have known that the ingredients in its Baby Foods, and the final products, could contain materials such as toxins, heavy metals, and perchlorate, and yet it did not test all ingredients and finished products, including the Baby Foods, for such substances.

---

[15] https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/.

92.     The Baby Foods are available at numerous retail and online outlets throughout the United States, including in Florida, Minnesota, and Illinois.

93.     Third-party testing, as well as Defendant's internal testing, has made clear that the Baby Foods may in fact contain levels of both heavy metals and/or perchlorate.

94.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the risk and/or presence of heavy metals and/or non-organic or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

95.     Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products may contain heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the labels, packaging, advertising, and statements, or that these toxins can accumulate over time in the child's body to the point where poisoning, injury, and/or disease can occur.

## V.    DEFENDANT HAD KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES.

96.     Defendant had sufficient notice of its breaches of express warranties. Defendant has, and had, exclusive knowledge of the physical and chemical makeup of the Baby Foods. Defendant also had exclusive knowledge of its suppliers and whether any of them supplied ingredients at risk of containing perchlorate.

97.     Additionally, Defendant received notice of the contaminants in its baby food products, including the Baby Foods, through the Healthy Babies Bright Futures nonprofit organization, which found levels of heavy metals and perchlorate in its Baby Food products.

35

98.     Defendant did not change its packaging or labeling to include a disclaimer that the Baby Foods contained, or may contain, any levels of heavy metals or perchlorate.

## VI.   PRIVITY EXISTS WITH THE PLAINTIFFS AND THE PROPOSED CLASSES.

99.     Defendant knew or should have known that consumers such as Plaintiffs and the proposed Classes would be the end purchasers of the Baby Foods and the target of its advertising and statements.

100.     Defendant intended that the warranties, advertising, labeling, statements, and representations on its Baby Foods would be considered by the end purchasers of the Baby Foods, including Plaintiffs and the proposed Classes.

101.     Defendant directly marketed to Plaintiffs and the proposed Classes through statements on its website, labeling, advertising, and packaging.

102.     Plaintiffs and the proposed Classes are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

103.     Plaintiffs bring this action individually and on behalf of the following Classes pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in the United States who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Class").

104.     Plaintiff Hampton brings this action individually and on behalf of the following Florida Sub-Class:

> All persons who are citizens of the State of Florida who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Florida Sub-Class");

105.     Plaintiff McKeon brings this action individually and on behalf of the following Minnesota Sub-Class:

All persons who are citizens of the State of Minnesota who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Minnesota Sub-Class");

106.    Plaintiff MacLeod brings this action individually and on behalf of the following Illinois Sub-Class:

All persons who are citizens of the State of Illinois who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Illinois Sub-Class");

107.    Together, the National Class and the Florida, Minnesota, and Illinois, Sub-Classes shall be collectively referred to herein as the "Class."  Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

108.    Excluded from the Class and Sub-Classes are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

109.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable. Purchasers of the Baby Foods can identify their purchases through receipts, store rewards programs, and their own testimony.

110.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class members in a single action will provide substantial benefits to the parties and Court.

111.    Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

     a.    whether Defendant owed a duty of care to Plaintiffs and the Classes;

     b.    whether Defendant knew or should have known that the Baby Foods contained, or may contain, heavy metals;

37

c.  whether Defendant knew or should have known that the Baby Foods contained, or may contain, perchlorate;

d.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are safe for human infant, baby and toddler consumption;

e.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious and safe for consumption;

f.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are appropriate for consumption by babies and children at various Stages of growth;

g.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are "organic baby food";

h.  whether Defendant wrongfully failed to disclose that the Baby Foods contained, or may contain, heavy metals and/or perchlorate;

i.  whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

j.  whether those representations are likely to deceive a reasonable consumer;

k.  whether a reasonable consumer would consider the presence, or risk of, heavy metals and/or perchlorate as a material fact in purchasing baby food;

l.  whether Defendant had knowledge that those representations were false, deceptive, and misleading;

m.  whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

n.  whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, lead and/or perchlorate is material to a reasonable consumer;

o.  whether Defendant's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

p.  whether Defendant violated the laws of the State of Florida;

q.  whether Defendant violated the laws of the State of Minnesota;

r.  whether Defendant violated the laws of the State of Illinois;

s.  whether Defendant breached its express warranties;

38

t.   whether Defendant breached its implied warranties;

u.   whether Defendant engaged in unfair trade practices;

v.   whether Defendant engaged in false advertising;

w.   whether Defendant's conduct was negligent per se;

x.   whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

y.   whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

z.   whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

112.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

113.   Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

114.   Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

115.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

116.   Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Class.

117.    As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I

**Breach of Express Warranty Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

118.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

119.    Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiffs and the Class.

120.    Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that its Baby Foods are:

    a.    Appropriate for certain Stages of babies; and

    b.    "Organic."

121.    Defendant made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Baby Foods.

122.    Defendant's advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

123.    Defendant's Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they:

    a.    Are not suitable for consumption by human infants, babies and toddlers; and

    b.   Contain, or may contain, levels of heavy metals and/or perchlorate.

124.    Defendant was on notice of this breach as it was aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy as well as by the Subcommittee Report.

125.    Privity exists because Defendant expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy, organic, and suitable for consumption and by failing to make any mention of heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

126.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

127.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

**COUNT II**
**Breach of Implied Warranty of Merchantability Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclasses)**

128.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

129.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

130.    There was a sale of goods from Defendant to Plaintiffs and the Class.

131.    At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and, prior to the time the Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies and children), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was organic and safe and appropriate for human infant consumption. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Baby Foods.

132.    The Baby Foods were not fit for their ordinary use, consumption by babies and children, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging.

133.    The Baby Foods did not conform to Defendant's affirmations of fact that they were organic because they contained the chemical perchlorate.

134.    Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging.

135.    Defendant was on notice of this breach, as it was aware of the heavy metals and/or perchlorate included, or at risk of being included, in the Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

136.    Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were organic, high-quality and suitable for consumption by babies and children, and by failing to make

any mention of heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

137.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

138.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT III
**Fraudulent Misrepresentation Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

139.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

140.     Defendant falsely represented to Plaintiffs and the Class that their Baby Foods are:

a.   Appropriate for certain Stages of babies; and

b.   "Organic."

141.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase its Baby Foods.

142.     Defendant knew that their representations about the Baby Foods were false in that the Baby Foods contained, or were at risk of containing, levels of heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements,

promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

143.    Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

144.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

145.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT IV**
**Fraud by Omission Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

146.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

147.    Defendant concealed from and failed to disclose to Plaintiffs and the Class that its Baby Foods contained, or were at risk of containing, heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

148.    Defendant was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because: (1) Defendant was in a

superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

149.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

150.   Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior when compared to how the Baby Foods are advertised and represented by Defendant.

151.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

152.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### COUNT V
### Negligent Misrepresentation Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

153.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

154.    Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Baby Foods.

155.    Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Baby Foods from the marketplace or to take other appropriate remedial action.

156.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Baby Foods were not as advertised or suitable for their intended use, consumption by babies and children, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) certain Baby Foods were not organic because they contained, or were at risk of containing, levels of perchlorate; (2) the Baby Foods were not nutritious, superior quality, pure, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals, perchlorate, and/or other non-organic ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated, or at risk of being adulterated, by heavy metals and perchlorate; and (4) the Baby Foods were otherwise not as warranted and represented by Defendant.

157.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

158.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VI
### Unjust Enrichment Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

159.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

160.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of the Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

161.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

162.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

163.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

164.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VII
### Violation of the Florida Deceptive and Unfair Trade Practices Fl. Stat. §§ 501.201-501.213, On Behalf of Plaintiff Bryan and the Florida Sub-Class

165.    Plaintiffs incorporate by reference and allege each and every allegation contained above, as though fully set forth herein.

166.    This is an action for relief under Section 501.201, et seq., Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

167.    The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202 (2).

168.    Section § 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff Bryan and the Florida Sub-Class are "Consumers" within the meaning of § 501.203(7), Florida Statutes.

169.    Section § 501.203(8), Florida Statutes defines "Trade or Commerce" as "[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." "Trade or Commerce" includes "the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity." The advertising, soliciting, providing, offering, or distribution of the Baby Foods to Plaintiff Bryan and the Florida Sub-Class is "Trade or Commerce" within the meaning of section Fla. Stat. § 501.203(8).

170.    Fla. Stat. § 501.204(1) provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

171.    Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly, intentionally and/or negligently concealing from Plaintiff Hampton and the Florida Sub-Class the fact that the Baby Foods contained heavy metals, chemicals or toxins, which was not readily discoverable. Defendant should have disclosed this information because it was in a superior position to know the true make-up and ingredients of the Baby Foods, and Plaintiff Hampton and the Florida Sub-Class could not reasonably be expected to learn or discover the true facts related to nutritional make-up, ingredients and/or quality of the Baby Foods.

172.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violates the provisions of Florida's Deceptive and Unfair Trade Practices Act.

173.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff Hampton and the Florida Sub-Class have suffered or will suffer damages for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes, and which include, without limitation, a full refund for the Baby Foods they have purchased, all of which constitute cognizable damages under the Florida Deceptive and Unfair Trade Practices Act §§ 501.201, *et seq*.

174.    Plaintiff Hampton and the Florida Sub-Class are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

**COUNT VIII**
**Violation of Minnesota Unlawful Trade Practices Act**
**Minn. Stat. §§ 325D.13, *et seq*. on Behalf of Plaintiff McKeon and the Minnesota Sub-Class**

175.    Plaintiffs incorporate by reference and allege each and every allegation contained above, as though fully set forth herein.

176.    Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices Act (MUTPA).

177.    Defendant violated the MUTPA by knowingly misrepresenting the true quality and ingredients of the Baby Foods by falsely claiming that the Baby Foods are:

    a.    Appropriate for certain Stages of babies; and

    b.    "Organic."

178.    Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

179.    Defendant's pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Sub-Class with respect to the Baby Foods' quality, ingredients, and suitability for consumption by babies.

180.    Defendant intended that Plaintiff McKeon and the Minnesota Sub-Class would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' quality, ingredients, and suitability for consumption by babies.

181.    Defendant's conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

182.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods. Had Plaintiff known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

183.    Defendant's unlawful conduct is continuing, with no indication that Defendant's intent to cease this fraudulent course of conduct.

184.    As a direct and proximate result of Defendant's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

185.    Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Food at all had they known of the presence or risk of heavy metals, perchlorate and/or any other ingredients or contaminants that do not conform to the packaging claims.

186.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff McKeon and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MUTPA.

**COUNT VIII**
**Violation of Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. §§ 325D.44, *et seq.* on Behalf of Plaintiff McKeon and the Minnesota Sub-Class**

187.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

188.    Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

189. Defendant willingly engaged in deceptive trade practices, in violation of the MUDTPA, by knowingly misrepresenting the true quality of the Baby Foods by falsely claiming that the Baby Foods:

    a. Appropriate for certain Stages of babies; and

    b. "Organic."

190. Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging claims.

191. Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Sub-Class with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies and children.

192. Defendant intended that Plaintiff McKeon and the Minnesota Sub-Class would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

193. Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

194. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether

to purchase the Baby Foods.  Had Plaintiff McKeon known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

195.     Defendant intended that Plaintiff McKeon and the Class would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

196.     Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

197.     As a direct and proximate result of Defendant's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

198.     Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging.

199.     Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff McKeon and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

## COUNT IX
### Violation of Minnesota False Statement in Advertising Act
### Minn. Stat. §§ 325F.67, *et. seq.* on Behalf of Plaintiff McKeon and the Minnesota Sub-Class

200.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

201.     Plaintiff McKeon purchased "goods," specifically the Baby Foods discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

202.    Plaintiff McKeon purchased the Baby Foods through Defendant's statements on the packaging that contained numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Defendant that were untrue, deceptive, and misleading.

203.    By engaging in the conduct herein, Defendant violated and continues to violate Minn. Stat. § 325F.67.

204.    Defendant's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Baby Foods:

    a.    Appropriate for certain Stages of babies; and

    b.    "Organic."

205.    Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging claims.

206.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Sub-Class with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

207.    Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

208.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether

to purchase the Baby Foods. Had Plaintiff McKeon known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

209.    Defendant intended that Plaintiff McKeon and the Minnesota Sub-Class would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

210.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

211.    As a direct and proximate result of Defendant's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Foods that was worth less than the price they paid.

212.    Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these non-conforming ingredients, contaminants, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

213.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff McKeon and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the FSAA.

**COUNT X**
**Violation of Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. §§ 325F.69, *et. seq.* on Behalf of Plaintiff McKeon and the Minnesota Sub-Class**

214.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

215.    Plaintiff McKeon is a resident of the State of Minnesota.

216.    Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

217.    Defendant's representations with respect to the Baby Foods were made in connection with the sale of the Baby Foods to Plaintiff McKeon and the Minnesota Sub-Class.

218.    Defendant knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of their Baby Foods.  Specifically, Defendant falsely represented that its Baby Foods:

    a.    Appropriate for certain Stages of babies; and

    b.    "Organic."

219.    Defendant knew or should have known that the Baby Foods did not have the quality described above because they contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

220.    Defendant intended for Plaintiff McKeon and the Minnesota Sub-Class to rely on and accept as true these representations in deciding whether to purchase the Baby Foods.

221.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Baby Foods' quality, ingredients, fitness for consumption and, by extension, the true value of the Baby Foods. Plaintiff McKeon and the Minnesota Sub-Class relied on, and were in fact deceived by, Defendant's representations and omissions respect to the Baby Foods' quality, ingredients, and fitness for consumption in deciding to purchase them over competitors' baby foods.

222.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether

to purchase the Baby Foods.  Had Plaintiff known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

223.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

224.    As a direct and proximate result of Defendant's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

225.    Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these non-conforming ingredients, contaminants, and/or non-organic or other ingredients or contaminants that do not conform to the packaging claims.

226.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff Bigaouette and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MPCFA.

## COUNT XII
**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq., on behalf of Plaintiff MacLeod and the Illinois Sub-Class.**

227.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

228.    The conduct described in this Complaint constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* ("hereinafter, "ICFA").

229.   Defendant engaged in a deceptive act or practice in violation of ICFA by knowingly misrepresenting, concealing, or failing to disclose the Baby Foods' true quality and suitability for consumption by infants.

230.   Specifically, Defendant claims, on both its labels and its websites, that its Baby Foods are:

      (a)   Appropriate for certain "Stage[s]" of babies; and

      (b)   "Organic."

231.   Defendant failed to disclose the presence, or risk of, heavy metals, perchlorate and/or any other ingredients or contaminants that do not conform to the packaging claims.

232.   Defendant's deceptive acts and practices are continuing.

233.   Defendant intended for Plaintiff MacLeod and the Illinois Sub-Class members to rely on and accept as true these advertisements and representations in deciding whether to purchase the Baby Foods and at what price.

234.   Defendant's misrepresentations, concealment, omissions, and other deceptive conduct was likely to deceive consumers with respect to the Baby Foods' quality, ingredients, and suitability for consumption by infants.

235.   Defendant's misrepresentations, concealment, omissions, and other deceptive conduct was likely to cause consumers to purchase and/or overpay for the Baby Foods.

236.   Defendant's misrepresentations, concealment, omissions, and other deceptive acts occurred before the Plaintiff MacLeod and the Illinois Sub-Class decided to purchase the Baby Foods.

237.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive Plaintiff MacLeod and the Illinois Sub-Class with respect to the Baby Foods' quality and suitability for consumption by babies and children.

238.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive and cause the Illinois Plaintiffs and the Illinois Sub-Class members to purchase the Baby Foods.

239.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive and cause Plaintiff MacLeod and the Illinois Sub-Class members to purchase and/or overpay for the Baby Foods.

240.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

241.    The facts misrepresented, concealed, or not disclosed by Defendant with respect to the presence of heavy metals and/or perchlorate are material facts because Plaintiff MacLeod and any reasonable consumer would have considered those facts important in deciding whether to purchase the Baby Foods, and at what price.

242.    If Plaintiff MacLeod and the Illinois Sub-Class members had known that the Baby Foods did not in fact match the quality and ingredients described above, they would not have paid the price premium they paid for the Baby Foods.

243.    If Plaintiff MacLeod and the Illinois Sub-Class members had known that the Baby Foods did not in fact match the quality and ingredients described above, they would not have purchased the Baby Foods at all.

244. As a result of Defendant's conduct, Plaintiff MacLeod and the Illinois Sub-Class members have suffered actual damages, in that they purchased Baby Foods at a price far greater than they would have paid if they had knowledge of the levels of heavy metals and/or perchlorate present in the Baby Foods.

245. As a result of Defendant's conduct, the Plaintiff MacLeod and the Illinois Sub-Class members have suffered actual damages, in that they purchased Baby Foods that they would not have purchased at all if they had knowledge of the levels of heavy metals and/or perchlorate present in the Baby Foods.

As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Plaintiff MacLeod and the Illinois Sub-Class members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.Defendant's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously entitling Plaintiff MacLeod and the Illinois Sub-Class members to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A. An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B. An order enjoining Defendant from selling the Baby Foods until the levels of heavy metals and/or perchlorate are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.      An order enjoining Defendant from selling the Baby Foods in any manner suggesting or implying that they are healthy and safe for consumption;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendant to pay punitive damages on any count so allowable;

J.      An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  March 4, 2021

s/  Kevin Landau
Kevin Landau
Miles Greaves
TAUS, CEBULASH & LANDAU, LLP

80 Maiden Lane, Suite 1204
New York, NY 10038
(212) 931-0704

Daniel E. Gustafson
Raina C. Borrelli
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
rborrelli@gustafsongluek.com

Kenneth A. Wexler
Kara A. Elgersma
**WEXLER WALLACE, LLP**
55 West Monroe, Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

Patrick Howard
**SALTZ, MONGELUZZI, &**
**BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
P: 215-575-3895
sparis@smbb.com
phoward@smbb.com

Matthew D. Schelkopf
Lori G. Kier
Davina C. Okonkwo
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
mds@sstriallawyers.com
lgk@sstriallawyers.com

dco@sstriallawyers.com

***Attorneys for Plaintiffs***