**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
NICOLE STEWART, SHANNON
FITZGERALD, and SUMMER APICELLA,
on behalf of themselves and all others similarly
situated,

                                        Plaintiffs,

                   -against-

NURTURE, INC.,

                                         Defendant.
---------------------------------------------------------- X
STEPHANIE SOTO, individually and on behalf of
all others similarly situated,

                                         Plaintiff,

                   -against-

NURTURE, INC.,

                                         Defendant.
---------------------------------------------------------- X
NITA JAIN, individually and on behalf
of all others similarly situated,

                                         Plaintiff,

                   -against-

NURTURE, INC. d/b/a Happy Family Brands

                                         Defendant.
---------------------------------------------------------- X

CASE NO.
1:21-cv-01217-MKV

1:21-cv-01271-MKV

1:21-cv-01473-MKV

```
--------------------------------------------------------- X
```
JODI SMITH, individually and on behalf
of all others similarly situated,

       Plaintiff,

   -against-             7:21-cv-01534

NURTURE, INC.

       Defendant.
```
--------------------------------------------------------- X
```
LILLIAN HAMPTON, KELLY MCKEON,
AND JEN MACLEOD, individually and on
behalf of all others similarly situated,

       Plaintiffs,

   -against-             1:21-cv-01882

NURTURE, INC., d/b/a Happy Family
Organics and Happy Baby Organics,

       Defendant.
```
--------------------------------------------------------- X
```

**MEMORANDUM OF LAW IN SUPPORT OF THE *STEWART* PLAINTIFFS'**
**MOTION FOR CONSOLIDATION AND TO SET DEADLINES**

1

I.      INTRODUCTION

Plaintiffs Nicole Stewart, Shannon Fitzgerald and Summer Apicella ("the *Stewart*

Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of

law in support of their motion for consolidation of the above-captioned actions against Nurture,

Inc. ("Defendant" or "Nurture"), as well as any subsequently filed or transferred related actions,

for all purposes, including pretrial proceedings and trial, pursuant to Federal Rule of Civil

Procedure 42(a) ("Rule 42(a)"), and to set certain deadlines regarding the filing of motions for

interim class counsel and a consolidated amended complaint should the Court grant consolidation.

The *Stewart* Action was the first-filed, and is thus the low-numbered case, in this District.

Five similar actions (the "Related Actions")[1] concerning similar facts and allegations are

currently pending before this Court.  The Related Actions each allege that certain of Nurture's

baby food products (the "Tainted Baby Foods") are and were tainted with significant and

dangerous levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury (the

"Heavy Metals"), and that Nurture misrepresented or omitted disclosure of this fact from

consumers.   Each Related Action seeks, *inter alia*, injunctive relief barring Nurture from

continuing to misrepresent the truth about its products as well as monetary damages compensating

for the purchase of the Tainted Baby Foods.  The Related Actions present similar factual and legal

issues and will involve the same or similar discovery.  Accordingly, consolidation of the actions

into a single action is called for under Fed. R. Civ. P. 42(a).[2]  Through their respective class actions,

---

[1] *Stewart v. Nurture, Inc.*, Case No. 1:21-cv-01217 (S.D.N.Y.); *Soto v. Nurture, Inc.*, Case No. 1:21-cv-01271 (S.D.N.Y.); *Jain v. Nurture, Inc.*, Case No. 1:21-cv-01473 (S.D.N.Y.); *Smith v. Nurture, Inc.*, Case No. 7:21-cv-01534 (S.D.N.Y.); and *Hampton et al v. Nurture, Inc.*, Case No. 1:21-cv-01882 (S.D.N.Y.).

[2] In addition to the Related Actions, the following additional substantially similar cases were filed against Nurture in other federal district courts: *Wallace et al v. Gerber Products Co. et al*, Case No. 2 :21-cv-02531 (D.N.J.); *Robbins v. Gerber et al*, Case No. 2:21-cv-01457 (C.D. Cal.); *Walls*

plaintiffs in the Related Actions allege a combination of various state consumer protection statutes and other common law causes of action against Defendant Nurture.[3]

The *Stewart* Plaintiffs respectfully request that the Related Actions be consolidated into a single action under their lowest numbered action.  The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) (district court has "broad discretion to determine whether consolidation is appropriate.").

Here, the *Stewart* Plaintiffs respectfully propose that consolidation of the Related Actions is warranted, as the actions require proof of the same basic set of facts.  Specifically, each of the Related Actions focuses on whether Nurture is liable to consumers for its alleged misrepresentations and omissions regarding the true level of Heavy Metals contained in the Tainted Baby Foods.  Since the Related Actions pending before this Court present essentially the same factual and legal issues, involve the same defendant, and will involve substantially the same discovery, consolidation is appropriate.  *See, e.g., Crumrine v. Vivint Solar, Inc.*, No. 19-CV-5777 (FB) (JO), 2020 U.S. Dist. LEXIS 50090 (E.D.N.Y. Mar. 23, 2020) (consolidation appropriate where separate class actions are "substantially similar.") (citing Fed. R. Civ. P. 42(a)).  The Related

---

*et al v. Beech-Nut Nutrition Corporation et al*, Case No. 1:21-cv-00870 (E.D.N.Y.); *Johnson v. Beech-Nut Nutrition Company et al*, Case No. 2:21-cv-02096 (D. Kan.); and *Albano et al v. Hain Celestial Group, Inc. et al*, Case No. 2:21-cv-01118 (E.D.N.Y.).  Thus, at this time, there appear to be five cases against Nurture pending in other jurisdictions.  All such cases name multiple defendants, including Nurture.  However, no case filed against Nurture in this District includes any other defendant.

[3]  The causes of action alleged include: violations of, among others, New York, Florida, Georgia, Minnesota, Pennsylvania and Illinois state consumer protection act statutes, unjust enrichment, negligent misrepresentation, fraud, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.

Actions present similar factual and legal issues and will involve the same or similar discovery. Accordingly, consolidation of the actions is called for under Rule 42(a).

## II.    FACTUAL BACKGROUND

These Related Actions all arise out of a recent report dated February 4, 2021, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* ("the Congressional Report"), issued by the Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, U.S. House of Representatives ("the House Subcommittee").[4]   The Congressional Report issued detailed findings that Heavy Metals, including arsenic, cadmium, lead, and mercury, were present in dangerously "significant levels" in numerous commercial baby food products, including those of Defendant.  *See* Stewart Complaint ¶ 1.  The Food and Drug Administration (the "FDA") and the World Health Organization ("WHO") have declared Heavy Metals dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.  *See id.* at ¶ 17.  Even low levels of exposure can cause serious and often irreversible damage to brain development.  *See id.* (citing Congressional Report at 2).  In fact, children's exposure to toxic heavy metals causes, among other things, permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.  *See id.* (citing Congressional Report at 9).[5]   The FDA cautions that infants and children

---

[4]   *Available at*  https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed March 7, 2021).

[5] *See also* Miguel Rodriguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children:  A Systematic Review and Meta-Analysis* (April 9, 2013) –
www.sciencedirect.com/science/article/abs/pii/S0048969713003409?via%3Dihub) (last accessed March 7, 2021).

are at the greatest risk of harm from toxic heavy metal exposure.  *See id.*[6].  All of the Related Actions rely on the Congressional Report to allege substantially similar allegations in each case.

The Congressional Report arose out of reports alleging high levels of toxic Heavy Metals in baby foods, as a result of which the House Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food in the United States, including both makers of organic and conventional products.  *See id*. at ¶ 18.  One of those companies was Defendant Nurture, which responded to the House Subcommittee's requests and produced its internal testing policies, test results for ingredients and/or finished products, and documentation about what it did with ingredients and/or finished products that exceeded its internal testing limits. *See id*. at ¶ 18-19.  The FDA and other organizations have set rules and/or issued guidelines and recommendations as to the maximum allowable or advisable and safe levels of inorganic arsenic, lead, cadmium and mercury in various circumstances, and the test results of Nurture (which sells Happy Family Organics, including baby food products under the brand name Happy BABY) baby foods eclipse those levels for inorganic arsenic, lead, mercury, and cadmium.  *See id.* at ¶ 20 (citing Congressional Report at Findings, Paragraph 1).

According to the Congressional Report, Nurture "sold finished baby foods after testing showed they contained as much as 180 ppb inorganic arsenic[.]"  *Id*. at ¶ 23.  Over 25% of the tested baby food sold by Nurture exceeded 100 ppb inorganic arsenic.  *Id*.  On average, Nurture baby food on store shelves had "nearly 60 ppb inorganic arsenic."  *Id*.

The Congressional Report revealed that internal Nurture documents showed that it "sells products even after testing confirms that they are dangerously high in inorganic arsenic." *Id*. ¶ 24.

---

[6] *See* Food and Drug Administration, *Metals and Your Food* – www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food) (last accessed March 7, 2021).

This included products, like the Apple and Broccoli Puffs, that contained 180ppb inorganic arsenic, which was 80% higher than its own internal goal threshold of 100 ppb. *See id.*  In fact, 29 other products that Nurture tested and sold contained over 100 ppb inorganic arsenic. *See id.* Notably, despite the FDA's limit of 100 ppb inorganic arsenic for infant rice cereal, Nurture set its own internal standard for cereals with more than 75% rice at 115 ppb inorganic arsenic, which is 15% higher than what the FDA allows. *See id.*

According to the Congressional Report, Defendant regularly tests its finished baby food (as opposed to just the ingredients) for lead levels. *See id.* at ¶ 27.  Nurture's internal lead limit was 100 ppb, which the Congressional Report deemed "dangerously-high." *See id.*  Nonetheless, Nurture sold finished baby products after confirming that they contained as much as 641 ppb of lead, over six times its own standard. *See id.*  Furthermore, it sold five other products after they tested over 50 ppb lead. *See id.*  The Congressional Report concluded:  "It is not clear that even one of Nurture's baby food products registered at or below 1 ppb lead, which should be the upper limit for lead content according to the health experts at Consumer Reports, the Environmental Defense Fund, and American Academy of Pediatrics." *See id.*

The Congressional Report further concluded that 65% of Nurture's "finished baby food products contained more than 5 ppb cadmium, the EPA's limit for drinking water." *Id.* at ¶ 30. Defendant's multi-grain cereal tested at 49 ppb cadmium. *See id.*

The Congressional Report also stated, "Nurture sold a finished baby food product that contained 10 ppb mercury, and two others that contained 9.8 and 7.3 ppb.  A level of 10 ppb is five times more than the EPA's 2 ppb standard for drinking water.  In total, Nurture sold 56 products that contained over 2 ppb mercury." *Id.* at ¶ 33.

As to all of the Heavy Metals, the Congressional Report concluded that "Nurture created

internal standards but did not follow them" and that it describes its standards only as "'goal thresholds'" that are not used for decision-making or pre-conditions to selling a product. *Id.* at ¶ 34. As such, the thresholds "are not actually used to prevent products that contain high levels of toxic heavy metals from being sold." *Id.* In fact, Defendant does not claim to be testing for safety and sells the products it tests no matter what the content of Heavy Metals. *See id.*

To this day, baby foods containing dangerous levels of toxic Heavy Metals bear no label or warning to parents. But the Congressional Report makes clear that this is unacceptable and deceptive. *See id.* at ¶ 36. As a result of its studies of toxic Heavy Metal levels in baby food, the House Subcommittee has recommended that parents should avoid baby foods that contain ingredients testing high in toxic Heavy Metals, such as rice products. *See id.* at ¶ 37 (citing Congressional Report Findings, Paragraph 5).

Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell products that are unsafe. Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food. As the Congressional Report reveals, baby food manufacturers (including Nurture, which sells Happy Family Organics, including baby food products under the brand name Happy BABY) have violated the public trust. *See id.* at ¶ 38 (citing Congressional Report Findings, Paragraph 6).

Defendant's Tainted Baby Foods are available at numerous retail and online outlets and are widely advertised. *See id.* at ¶ 41. Despite the conclusions in the Congressional Report regarding the presence of dangerous levels of Heavy Metals in Nurture's Tainted Baby Foods, on its website, Defendant Nurture claims it is on a "mission to change the trajectory of children's health through nutrition." *Id*. at ¶ 39. It further touts its "Quality and Safety" standards, stating, "We taste and thoroughly analyze every batch of food and each individual ingredient that goes into

our products." *Id*.   Moreover, Defendant represents: "As parents, we hold ourselves to strict

standards to provide your little one with products that, when part of a balanced diet, help them

grow healthy and strong. Every product we make goes through a rigorous quality and safety test

so you can feel confident in what you're feeding your family." *Id*.

Based on Defendant's decision to advertise, label, and market its Tainted Baby Foods as

healthy, nutritious, and safe for consumption, it had a duty to ensure that these and other statements

were true and not misleading, which it failed to do.  *See id.* at ¶ 40.  Defendant Nurture mislead

reasonable consumers to purchase its Tainted Baby Foods to their detriment and the Related

Actions all uniformly seek appropriate remedies for such substantially similar violations.

## III.      ARGUMENT

By this motion, the *Stewart* Plaintiffs request that the Related Actions—which involve

materially similar allegations against Defendant and seek to certify materially similar classes—be

consolidated.[7]

### A.      The Related Actions should be consolidated.

The power to consolidate related actions falls within the broad inherent authority of every

court "to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants."   *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Consolidation of actions in federal court is governed by Rule 42 of the Federal Rules of Civil

Procedure, which provides:

> When actions involving a common question of law or fact are pending before
> the court, it may order a joint hearing or trial of any or all the matters in issue
> in the actions; it may order all the actions consolidated; and it may make such

---

[7] Undersigned counsel for the *Stewart* Plaintiffs have separately moved to consolidate related actions that were filed against Hain Celestial Group, Inc. in the United States District Court for the Eastern District of New York, to the extent it named Hain as a defendant, which included an action that also named Nurture as a defendant styled *Walls et al v. Beech-Nut Nutrition Corporation et al*, Case No. 1:21-cv-00870 (E.D.N.Y.).

orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (court has "broad discretion to determine whether consolidation is appropriate.").

Consolidation is appropriate pursuant to Rule 42(a) when actions "involve common questions of law or fact." *Xu v. Gridsum Holding Inc.*, 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018). Here, consolidation of the Related Actions is warranted, as the actions require proof of the same basic set of facts based upon the same Congressional Report under the same or substantially similar laws. Specifically, each of the Related Actions focuses on whether Nurture is liable to Plaintiffs and Class Members for its Tainted Baby Foods that contained dangerous levels of toxic Heavy Metals, and its misrepresentations and omissions regarding same. Since the Related Actions pending before this Court present the same factual and legal issues, involve the same defendant, and will involve substantially the same discovery, consolidation is appropriate. *See Simmons v. Spencer*, 2014 U.S. Dist. LEXIS 58743, at *6-7 (S.D.N.Y. Apr. 24, 2014) (consolidation appropriate where "factual and legal allegations underlying all class definitions sufficiently overlap").

Indeed, if not consolidated, the separate Related Actions would result in virtually identical discovery requests, duplicative motion practice, and would cause an unnecessary drain on judicial resources. And this is true despite minor variations in class definitions and state-specific causes of action in the Related Actions. *See Simmons*, 2014 U.S. Dist. LEXIS 58743, at *6-7 (despite "minor differences" in class definitions, court consolidated various class actions involving common questions of law and fact because, *inter alia*, the "factual and legal allegations underlying all class definitions sufficiently overlap.").

In addition, to ensure continued judicial efficiency, the *Stewart* Plaintiffs also respectfully

9

submit that the Court should order that any future actions that are filed or transferred to this Court

based on the same or similar facts and circumstances be consolidated with the Related Actions.

*See, e.g.*, *Sklar v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.)*,

258 F.R.D. 260, 274 (S.D.N.Y. 2009) ("Future cases raising common questions of law and fact

filed in this Court or transferred to this Court will also be consolidated into the appropriate

consolidated case.").

Defendant will suffer no prejudice by litigating one consolidated action rather than five—

or more—separate suits.  Consolidation of the Related Actions would therefore inure to the benefit

of all parties involved as well as the Court.

Finally, with respect to scheduling issues, the *Stewart* Plaintiffs respectfully request that

the Court set the deadline for the filing of motions seeking interim lead counsel appointment

pursuant to Fed. R. Civ. P. 23(g) for ten (10) business days following the entry of the consolidation

order, should the Court grant the instant motion.  In addition, the *Stewart* Plaintiffs respectfully

request that the Court set a deadline for the filing of a consolidated amended complaint for the

Related Actions, should consolidation be granted, for 45 days following the entry of an order under

Rule 23(g).

## IV.     CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Related Actions be

consolidated for all purposes.

Respectfully submitted,

*/s/ Lori G. Feldman*

Lori G. Feldman, Esq. (LF-3478)
**GEORGE GESTEN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (561) 232-6002
Fax: (888) 421-4173
*LFeldman@4-Justice.com*

**CALCATERRA POLLACK LLP**
Janine L. Pollack, Esq.
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Phone: (917) 899-1765
Fax: (332) 206-2073
Email:  jpollack@calcaterrapollack.com

**GEORGE GESTEN MCDONALD, PLLC**
David J. George, Esq. (*pro hac vice* forthcoming)
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33463
Phone: (561) 232-6002
Fax: (888) 421-4173
*DGeorge@4-Justice.com*

*Attorneys for Plaintiffs Nicole Stewart, Shannon*
*Fitzgerald and Summer Apicella and the Proposed*
*Class in the Stewart Action*

11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 7, 2021, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


<u>*/s/ Lori G. Feldman*</u>
Lori G. Feldman