UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re NURTURE BABY FOOD LITIGATION**<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 1:21-cv-01217-MKV |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO STRIKE THE DECLARATION OF NEGA BERU
SUBMITTED IN SUPPORT OF DEFENDANT NURTURE, LLC'S
<u>MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT</u>**

**PRELIMINARY STATEMENT**

Plaintiffs submit this Reply Memorandum of Law in further support of their motion to (1) strike all or portions of the Declaration of Nega Beru, Ph.D. ("Beru Declaration") (Dkt. 165) submitted by Defendant Nurture, LLC ("Defendant" or "Nurture") in support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("MTD") (Dkt. 163) or, in the alternative, (2) disregard the Beru Declaration in its entirety, in considering the MTD. As Plaintiffs noted in their opening brief, while matters outside the pleadings may "sometimes" be considered on a primary jurisdiction motion, the existence of these instances is not limitless, and this is not one of those times when the Court should consider such matters.

Defendant admits in the opening sentence of its opposition brief that Dr. Beru and the FDA's Closer to Zero Action Plan ("Action Plan") are concerned with "the appropriate levels" of heavy metals "that can be safely present in baby foods." (Dkt. 179.) But that is not Plaintiffs' actual claim; their claim is that Defendant failed to disclose to consumers that its baby foods contain (or have a material risk of containing) heavy metals, perchlorate, and/or other contaminants. (Dkt. 157 at ¶25 (defining Omissions).) This alone requires that the Beru Declaration be excluded.

Defendant incorrectly argues in its opposition brief that the mere filing of a primary jurisdiction motion gives it the right to put before this Court anything outside the four corners of the complaint. (Dkt. 179 at 6-8.) But the federal rules still apply. Defendant has failed to meet its burden to show it has satisfied the conditions for admission of the Beru Declaration given that Dr. Beru relies on the same public materials that the Court can review and evaluate, as well as outdated facts about past FDA work on heavy metals, and unsubstantiated facts about the FDA's current capabilities and ongoing intentions, resources, and capabilities that are the subject of both public

criticism and skepticism, all of which demonstrates Dr. Beru's disconnection from the FDA. In short, the Beru Declaration serves no useful purpose to the Court and should not be considered.

Given that the Beru Declaration fails to address Plaintiffs' actual claims and serves no useful purpose, it is prejudicial to Plaintiffs and should not be considered. However, if the Court does consider the Beru Declaration, it supports Plaintiffs' position rather than Defendant's position. As described by Dr. Beru, the amount of work and time that it will take the FDA to effectuate any legally binding action that would make any difference to the Plaintiffs in this case is lengthy and indeterminable, rather than swift and particular. As such, if considered by the Court, the Beru Declaration demonstrates that the Court should reject Defendant's argument for dismissal on the ground of primary jurisdiction.

**ARGUMENT**

**DEFENDANT HAS FAILED TO ADEQUATELY REBUT PLAINTIFFS' ARGUMENTS THAT THE BERU DECLARATION SHOULD NOT BE CONSIDERED**

A.  **The Beru Declaration Fails to Address Plaintiffs' Claims**

Defendant's argument that the Beru Declaration is "admissible expert testimony" because Dr. Beru has "ample qualifications" (Dkt. 179 at 8), is irrelevant. Fed. R. Evid. 403 is a safeguard in place to permit the Court to exclude evidence, including expert testimony, if its probative value is substantially outweighed by issues such as danger of prejudice, confusion, or waste of time. The Beru Declaration and the Action Plan simply do not address Plaintiffs' claims in this litigation and would result in all such dangers. While Dr. Beru and the Action Plan are concerned with "the appropriate levels" of heavy metals "that can be safely present in baby foods," (Dkt. 179 at 5), those are *not* Plaintiffs' claims. Rather, Plaintiffs allege that Defendant failed to disclose to consumers that its baby foods contain (or have a material risk of containing) heavy metals, perchlorate, and/or other contaminants. (Dkt. 157 at ¶25 (defining Omissions).) These claims are

almost identical to those alleged by the plaintiffs in *In re Plum Baby Food Litigation* ("*Plum*"), where the court declined to find that the FDA had primary jurisdiction on nearly identical allegations. *See id.*, Case No. 4:21-cv-913, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022). The *Plum* court held that "uncertainty over how and when the FDA will act counsels against an indefinite stay." *Id.* (citation omitted).[1] Because the Beru Declaration relies exclusively on the examination of the "appropriate levels of trace elements that can be safely present in baby foods" under the Action Plan (Dkt. 179 at 5), it misses the mark on Plaintiffs' claims here and should not be considered.

B.   **The Beru Declaration Serves No Useful Purpose**

Defendant argues that the Beru Declaration is appropriate simply "because a Court is not limited to documents which are subject to judicial notice on a motion for primary jurisdiction." (Dkt. 179 at 5.)[2] Moreover, claiming that Dr. Beru's Declaration is "admissible expert testimony,"

---

[1] Recently, Judge Hurd of the Northern District of New York distinguished the type of claims pled by the plaintiffs in *Plum* from the claims in *Gerber* and *Sprout*. *See In re Beech-Nut Nutrition Co. Baby Food Litig.*, No. 1:21-cv-133, 2023 WL 350818 (N.D.N.Y. Jan. 19, 2023). The *Beech-Nut* judge recognized that the plaintiffs in *Plum* had alleged that "'Defendants fail to disclose to consumers that the Baby Foods contain (or have a material risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.'" *Id.* at *3 (quoting *Plum*). The *Plum* court denied the defendant's primary jurisdiction motion. In contrast, the *Beech-Nut* judge also recognized that the plaintiffs in *Gerber* and *Sprout* had alleged that those "companies' packaging or marketing materials failed to warn that their products contained unsafe levels of heavy metals," and thus the courts in those cases, the Eastern District of Virginia and a New Jersey trial court, found that the FDA had primary jurisdiction because they would need to decide what levels of heavy metals are safe, which was better left to the FDA. *Id.* Because the court found that the Beech-Nut plaintiffs' claims were similar to those in *Gerber* and *Sprout*, it dismissed on primary jurisdiction grounds. *See Beech-Nut*, 2023 WL 350818, at *3. As discussed *supra*, Plaintiffs' claims here mirror those in *Plum*, not those in *Gerber*, *Sprout* or *Beech-Nut*.

[2] Defendant's citations are inapposite. In *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 347 n.1 (W.D.N.Y. 2018), the court stated the unremarkable proposition that it is "allowed to consider matters outside the pleadings as to the balance of defendants' motion." The court did not, however, consider any matters in deciding the motion. In *Canale v. Colgate–Palmolive Co.*, 258 F. Supp. 3d 312, 324 n.11 (S.D.N.Y. 2017), the court considered "correspondence between Defendant and

3

Defendant contends he has "ample qualifications" that Plaintiffs do not challenge. (Dkt. 179 at 8.) However, as discussed in Plaintiffs' opening motion, Plaintiffs do challenge his qualifications. Expert testimony can be excluded for a variety of reasons, including when an expert witness's testimony confuses the issue, is unfairly prejudicial, or is a waste of time. Fed. R. Evid. 702, 403. The Beru Declaration should be excluded under Fed. R. Evid. 403 since its "probative value is substantially outweighed" by the danger of "unfair prejudice" and "confusion of the issues."[3]

In addition to incorrectly addressing "levels" of heavy metals that can "safely" be in baby foods, which is not Plaintiffs' claim, the Beru Declaration also relies on materials demonstrating Dr. Beru's disconnection from the FDA and its current capabilities and ongoing intentions and resources, and, therefore, serves no useful purpose.[4] The Beru Declaration is, as Defendant concedes in its opposition brief, also based "exclusively on public statements made by the Food and Drug Administration ('FDA')." (Dkt. 179 at 5.) Dr. Beru left the FDA in 2017, several years prior to the issuance of each of the FDA's public statements, which were made in 2021 and 2022.

---

the FTC" but "*only to show that such correspondence exists and not for its content.*'" (emphasis added). In *Snyder v. Green Roads of Florida LLC*, 430 F. Supp. 3d 1297, 1307-08 (S.D. Fla. 2020), FDA rules and regulations and an FDA public news release were considered, rather than a paid expert declaration.

[3] Defendant states that Rule 26 has no relevance here because Dr. Beru is not a trial expert. (Dkt. 179 at 9.) However, while Plaintiffs maintain that the Court does not need an expert to read the public materials upon which Dr. Beru relies, it would be the height of unfairness for the Court to consider the Beru Declaration without affording Plaintiffs the opportunity to take discovery of Dr. Beru and submit a rebuttal expert should it find experts are needed or appropriate here.

[4] As an example of the impropriety of the Beru Declaration, Dr. Beru urges the Court to rely on the FDA's public statements "contradicting the conclusions drawn by authors of the Staff Report" in which he claims the "FDA 'reassure[d] parents and caregivers' that 'children are not at an immediate health risk from exposure to [heavy metals]' in foods'…." (Dkt. 165 at ¶7.) Asking the Court to accept the truth of this statement by the FDA on a motion to dismiss is improper and does not become proper simply because an expert is hired to say it.

4

(*See e.g.*, Dkts. 164-3 and 164-4 (dated March 5, 2021) and Dkts. 164-5 and 164-6 (dated April 8, 2021).)[5]

Because Dr. Beru no longer works at the FDA, he lacks the present knowledge to opine on the FDA's current capabilities or intentions. Indeed, as to the current consideration of these issues, the FDA is suffering from a crisis of confidence and is being criticized for its handling of critical issues. In fact, the FDA's handling of heavy metals in baby foods, the Action Plan, and the slow speed at which it is tackling this issue sorely undermines Dr. Beru's conclusions. *See e.g.,* Ex. A ("Baby Foods with Toxic Metals Stay on US Market While FDA Dithers," *Health Law & Business* (January 5, 2023));[6] Ex. B ("FDA's 'Closer to Zero' Plan Fails to Adequately Address Toxic Heavy Metals in Baby Food," *Food Safety News* (September 3, 2022); Ex. C ("Critics Say FDA, Industry Plans to Lower Heavy Metals in Baby Foods Don't Move Fast Enough," *News Channel 9 Spotlight on America* (May 3, 2021).

---

[5] Defendant's reliance on *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 340, 352 (S.D.N.Y. 2004) is misplaced. There, the court held that an affidavit in support of a stay would be considered *but would be weighed against the plaintiff's concerns* that: (1) the initial "outline" of the document was provided by defendants' counsel, (2) most of the work in preparing the affidavit was undertaken by two attorneys with Wright's law firm who lack FCC experience, and (3) extensive "review" of the document was then performed by attorneys for the defendants. *Id*. The plaintiff in *Gabelli* agreed that the expert (former FCC general counsel) was qualified to offer an opinion regarding issues involved in the case; that is not the case here where the declaration is being offered by a former employee who is opining as to the current status of the FDA's resources, and thus is unqualified to make such an opinion. Moreover, the *Gabelli* expert offered descriptions of underlying regulatory policies based on his own FCC experiences, with the court stating, "It is unlikely that the description of the underlying policies of the auctions is based on anything other than Wright's own FCC experiences." *Id*. Here, Nurture's expert is trying to opine as to FDA actions that are not based on his own experiences because he has not worked there for many years.

[6] "Ex." refers to exhibits submitted herewith to the Supplemental Declaration of Lori G. Feldman in Further Support of Plaintiffs' Motion to Strike the Declaration of Nega Beru Submitted in Support of Defendant Nurture, LLC's Motion to Dismiss the Consolidated Class Action Complaint.

While the FDA very recently issued proposed "draft guidance" for public comment for levels of lead in baby food for young children and babies, this draft guidance is merely a proposal and further demonstrates how slow the FDA is moving. *See* Ex. E. The "draft guidance" specifically states that "[i]t does not establish any rights for any person and is not binding on FDA or the public." *Id.* at 3. As such, the proposed "draft guidance" is not legally binding on any baby food manufacturer. *Id.* at 4 ("In general, FDA's guidance documents do not establish legally enforceable responsibilities."). Nor does it address cadmium, arsenic, or mercury. The proposed "draft guidance" does *not* apply to grain-based snacks such as certain of the baby food products at issue in this case (*see id.* at 7 n.6), including Defendant's HappyBaby and HappyTot puffs, teethers, bars, and other baby food snacks. (Dkt. 157-1.) In addition, the proposed "draft guidance" is not retroactive and, as such, cannot help the proposed class members with their claims here, as the proposed class period starts in 2017. Notably, according to the FDA, the "action levels" in the "draft guidance are not intended to direct consumers in making food choices," Ex. D, and, as discussed *supra*, addresses lead "levels" rather than the disclosure claims asserted by Plaintiffs in this action. This proposed "draft guidance" thus fully supports Plaintiffs' position that the primary jurisdiction doctrine should not be applied here, as the court found in *Plum, supra*. It further reinforces why the Beru Declaration should not be considered by this Court on Defendant's motion to dismiss: Dr. Beru's experience at the FDA is outdated and he is only offering a paid opinion on the same public materials that the Court can itself review if appropriate to make this legal ruling on primary jurisdiction. It thus serves no useful purpose and should not be considered.[7]

---

[7] In *Audiotext International, Ltd. v. MCI WorldCom Communications, Inc.*, No. CIV.A. 00–3982, 2001 WL 1580316, at *2-3 (E.D. Pa. Dec. 11, 2001), cited by Defendant, an employee affidavit was submitted where he had direct, specific knowledge of the issues deemed useful by the court. Here, Plaintiffs have specifically challenged Dr. Beru's knowledge as outdated and not on point. Defendant's other case citations are not helpful. In *White Plains Housing Authority v. BP Products*

### C. The Beru Declaration, if Allowed, Supports Plaintiffs' Case

As discussed above, the court in *Plum* ruled against primary jurisdiction because the "uncertainty over how and when the FDA will act counsels against an indefinite stay." *Plum*, 2022 WL 16640802, at *1. The Beru Declaration similarly shows there is "uncertainty over how and when the FDA will act" and thus fully supports Plaintiffs' arguments here against primary jurisdiction, just as in *Plum*. The Beru Declaration admits that "[t]here is no simple solution to reduce heavy metals in baby foods" and that "[r]egulating levels of heavy metals is not only a food safety issue, but it also affects agriculture, nutrition, health and medicine, domestic and international commerce, environmental health, and many other fields." (Dkt. 165 at ¶13.) Thus, setting action levels by the FDA requires that it work with and obtain input from numerous other governmental agencies and departments, which will take years. (*Id.* at ¶¶14-16.) Leaving aside that the FDA is only determining guidance for levels of heavy metals for the purposes of enforcement actions and is not issuing any regulations on packaging – the basis for this case – this demonstrates the complicated process described by Dr. Beru that could take years or even decades

---

*North America Inc.*, No. 17-cv-6250 (NSR), 2022 WL 17822560, at *8-9 (S.D.N.Y. Dec. 19, 2022), the materials that the plaintiff sought to preclude were not publicly available materials – or were not as publicly available as the FDA statements. In *Sierra Club v. Chesapeake Operating, LLC*, 248 F. Supp. 3d 1194, 1202 n.4 (W.D. Okla. 2017), the court took judicial notice of the Earthquake Response Summary found at public website (www.occeweb.com) pursuant to Fed. R. Evid. 201 because "the information can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, the accuracy of Dr. Beru's testimony is disputed and Dr. Beru does not fully disclose each and every one of the materials that he reviewed in preparing his testimony.

is the very "uncertainty over how and when the FDA will act" that the court in *Plum* found to counter against primary jurisdiction. *Plum*, 2022 WL 16640802, at *1. Moreover, as noted above, no action by the FDA will provide redress for the claims of Plaintiffs and the class going back years as it is only prospective.

## CONCLUSION

Plaintiffs respectfully request that the Court strike the Beru Declaration in its entirety. In the alternative, Plaintiffs respectfully request the Court refuse to consider the Beru Declaration in deciding Defendant's pending Motion to Dismiss.

Dated: January 26, 2023
      New York, New York

GEORGE GESTEN MCDONALD PLLC

By:  s/ Lori G. Feldman
Lori G. Feldman, Esq. (admitted in SDNY)
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone:   (917) 983-9321
Facsimile:   (888) 421-4173
E-Mail:         lfeldman@4-justice.com
E-Service:    eService@4-justice.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By:  s/ Rebecca A. Peterson
Rebecca A. Peterson (*Pro Hac Vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:   (612) 339-0981
E-Mail:         rapeterson@locklaw.com

**Plaintiffs' Interim Co-Lead Counsel**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 26, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Lori G. Feldman*
Lori G. Feldman
